Hear ye, hear ye, this Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Susan F. Hutchinson presiding, along with Justices Donald C. Hudson and Liam C. Brennan. The case is number 220417, Arthur Strong, Plaintiff-Appellee v. Board of Trustees of the North Chicago Police Pension Fund et al. Defendants' Appellants. Arguing for the Appellants, Krisha W. Ressler. Arguing for the Appellee, Thomas S. Raja Jr. All right, good morning, Council, and thank you for joining us on this platform this morning. When you are not speaking, we would ask that you go to mute mode so that we have even less interference, but we try our best to stay with you and have this completed. So, with that, Ms. Ressler, are you ready to proceed? I am, Your Honor. All right, you may do so. May I please the Court, Council? My name is Krisha Ressler, representing the Appellants, Defendants, City of North Chicago Police Pension Board, and the Trustees in their official capacity. The issue today is whether or not the Plaintiff is disabled and unable to return as a police officer due to a line of duty disability or a non-duty disability. For an applicant to be awarded a line of duty disability, they must satisfy 40 ILCS 5-3-114.1. And there is four prongs of this statute. One, is the applicant a police officer? Two, was he a police officer at the time of injury? Three, did he incur an accident or injury incurred in or resulting from the performance of an act of duty? And four, was he unable to return to duty? The facts in this case are disputed, whereby we ask the Court to use the manifest weight of the evidence standard when reviewing this case. Ms. Ressler, are you now agreeing, because I don't believe it was an agreement in the trial court, are you agreeing that he has filed this while he was a police officer? Yes, we understand where the trial court was coming from and we are not appealing that issue. Thank you, that solves some problems in organization, I appreciate that. Yes, so he has met that he is an applicant as a police officer and he was a police officer at the time of injury. So what is at issue is the three and four prong that I mentioned before. In regards to this accident, on October 25th of 2015, plaintiff was employed as a patrol officer with the North Chicago Police Department and he was on duty when a vehicle ran a stop sign and hit his squad car on 14th Street. Based on the board's determination, they determined that he was not credible. And there was enough evidence, conflicting evidence, to find that the plaintiff was not credible. Is that still your position, counsel? As to the issue of disability, you are alleging or arguing that there is a negative assessment of his credibility still? Is that your position? I am arguing that he is not credible. As to both issues, including disability? Yes, including disability. Can you tell me where in the record is there evidence that he is not disabled? Well, the pension board found that because he was not credible, that all of his subjective complaints to the IMEs, they found that that weighed to the part where he could still be a police officer. Which doctor do you rely on for that? Let's discount everything Mr. Strong said for the sake of argument. What evidence do you point to to suggest that he is not disabled? Dr. Carl Graf. He was the workers' comp IME who examined him three times. In the final IME, he did say that he was able to return back to medium capacity. Let's stop right there, though. We recognize, I suppose, there is law that says the board could adapt the testimony of Dr. Graf to the exclusion of five other doctors had a different opinion, correct? Correct. And also the three independent medical experts also said he was disabled, correct? That is correct. So doesn't at some point it become a little bit overwhelming? I mean, Dr. Graf versus five or six other medical experts. And here's the other thing I'd like to hone in on. Justice Brennan has raised the issue. However, even if the board relied on Graf, as I understand it, Dr. Graf never unequivocally stated that the officer Strong could return to work as a police officer. He had some contingencies, did he not, in his opinion, that were never actually met. Isn't that also true? Well, that is based on the department, and the department at that time was looking to already file grievances against him. So they didn't move forward on that. Let's focus on Graf for a second, because obviously the board can elect to rely solely on Graf, notwithstanding all these other opinions. But I'm focused on Graf's opinion, because prior to surgery, Graf certainly stated that Strong should be able to return to full-duty police work. But his opinion evolved after the surgery. And as I understand his opinion, after the surgery, then he says he should be able to perform, quote-unquote, medium physical workload. But he further recommends an evaluation by occupational health, a functional capacity exam, and acknowledged the possible need for a third surgery. So it seems to me that if you're going to rely on Graf, you have to rely on Graf post-surgery, not pre-surgery. And that seems a lot less certain to me. Well, it is uncertain, but it is based on the board to look at it. Well, the board is the ultimate arbitrator of disability. So they looked at all the other circumstances around that, where he was a security guard driving around Target all the time. And even though he testified that he has to call the police department, you know, he was still put in circumstances that is just the same as a police officer. Sitting in a car, I mean, that was the testimony, right? He was never attempting to apprehend somebody. And my understanding of that is that requires ultimately the ability to lift or sustain a force of 150 pounds on average. So, I mean, there was no suggestion that he was doing anything like that, either as an Uber driver or as a Target security man. Isn't that a fair assessment of the record? That is a fair assessment. The pension board also did witness him picking up luggage. I know that there was controversy as to what the weight was. Right. But he stated that he wasn't able to squat, and he was able to squat and pick the luggage up and pick it up and put it into the back seat. So there is conflicting evidence as what he can and cannot do. Whereas you mentioned in Dr. Graff, he was able to perform, you know, a three-quarter squat. But then in the FCE, they said that he didn't even attempt to do the squats. So there are, you know, the pension board did look at the conflicting subjective complaints on both all the medical. Also, if I could ask, getting back to Dr. Graff's opinions, you've acknowledged you have Dr. Graff that the board hung its head on. You have the total opposite opinions of a number of other qualified medical experts on the other side. And you're asking us and urging us that we should affirm based on the fact that the board would be entitled to take Graff's opinion over the other experts. But there's something a little bit unusual here. Did the board ever make any specific findings or set forth any rationale at all as to why it felt that Dr. Graff's opinion was the most credible and persuasive? Specifically, no, they did not. No, they did not in the finding of facts. Wouldn't that be a little troubling when you have so many experts on one side, one on the other, and there's no rationale articulated for believing one over the other? They didn't point to any specific testimony or facts? Right. No, that wasn't in the order and decision. Okay. What they hung their hats on is his credibility. The credibility of Dr. Graff? No, the credibility of the plaintiff and how he was not credible. You know, on any given day, and I think that's part of what some of the other doctors were talking about, he and his own testimony then went to that. On any given day, he could do different things. He might have been able to squat on a certain day, but on the day of the test, he was not able to. How were those taken into account? Because they were part of all of the doctor's testimony. Even Dr. Graff, you know, on any given day, he could have done XYZ, but it wasn't that he was faking it or malingering. He was having an issue that day. Wasn't that an issue that came up? I apologize. I don't recall if that was an issue that came up when it came up on whatever day he was feeling better than the other day. I can't state whether he was feeling better one day and not feeling better the other day. But based on the totality of the circumstances, the pension board did look to, you know, that he was able to do these things, even though he testified that he couldn't do these things. So, essentially, this decision is based upon, you've said it, the fact that they didn't believe him because of some prior incidents as well as what's happened in terms of testing here. And then you also mentioned that they were in the process, possibly, of filing grievances against him. I assume it was for doing some sort of employment while he was otherwise on some benefits for the disability. Should those considerations be a factor in these proceedings that there were other possible reprimands or something going on and, therefore, the board applied those reasons, which he did not have a chance to reply to, to this particular proceedings? Well, in this particular case, the plaintiff did have the opportunity to respond to all the grievances, which is the resignation agreement that the plaintiff's attorney prepared and he signed. So, he did have a chance and that was one of the things that the pension board did rely upon because instead of the plaintiff just accepting the fact that he's not going to apply with the city, the Public Safety Employees Benefit Act, the PSEBA, everyone states, is that he went into specifics and specifically stated that the injury in question was not due to the factors that, which is not going after an offending, not in a case of an emergency. They went into specific all factors, rather than just stating, I'm not going to apply. The best case scenario for the board in focusing on that is he's not entitled to a line of duty pension. Nothing in that agreement spoke to whether he should be entitled to the other pension. No, the agreement did not. That was specifically focusing on the line of duty disability. So, let's assume that for the sake of argument, this court were to find that the board was against the manifest way to the evidence to say that there was no disability. As it relates to the causation question, how does the credibility play into that? The credibility of Mr. Strong. For the causation? Yes. Well, when he was injured on October 25th of 2015, he went to see his first doctor four days later. And from the injury up to January, when he saw all of the other doctors, he did not complain of any back injury. So, that goes into causation. The pension board found that, you know, he stated that he got an injury, an x-ray, excuse me, of the back at the Lake Forest Hospital right when he was taken via ambulance, which there's no document saying that he got an x-ray or even complained about the back. So, it took up to two and a half months for the plaintiff to state that it was the car accident that caused the back. And again, that goes to the credibility where the pension board found that he was the only person that reported that the back hurt to all of the IMEs. And the board found that that wasn't credible. So, the board listed a number of things that found that the plaintiff was not credible. The first part was with the testimony compared to his application for a disability. The testimony stated that on the day that he got in an accident, he was attempting to apprehend someone that he drove past in a parked car was there with four occupants in it, and he could smell burnt cannabis. Whereas the application stated that he was driving past a driver and a passenger, and he witnessed what was engaged in rolling blunt. During that time, he also failed to report any secondary employment other than that Sigma Security Home would be on his application, he did not provide that he was also an employee of Uber. The other exhibits that conflicted with his testimony as I discussed previously was all of his discussion about how his back never showed any complaints until January. He even with all of the doctors that he was seeing before January he made no complaints of the back. What also was the pension board found troubling was in the, in the other reports in the police report, the employers investigative report, and the medical reports there was no discussion or explanation by the plaintiff that he was going after this alleged offender when he got in this app, and when he got in this accident. The, he was simply just driving his patrol car. He didn't have his lights or sirens on he didn't have his video on. He didn't dispatch this into anyone into the police department as to that he was going to do. He was on this investigation to look at this alleged are still got, he still got hit, whether he was on patrol let's assume the most minimal case scenario, he was on patrol, somebody blew a stop sign and hit him. Was he in the village. Yes. Was he driving a squad car. Yes. Did it have lights and siren. No. Did he have the right away. Yes, there was a stop sign. Somebody hit him. How isn't that in the line of duty. Well, that's that. I mean, you make a good point where there's tons of cases that conflict as to what is a line of duty, which is why we're here. So, the one thing that we would ask the court to look at is the Johnson case which is the Supreme Court case, which tells that the importance is is what capacity the police officer is acting when the assigned duties are similar to those involved in civilian occupant driving a patrol car, we would ask that you can't place a police officer to on the, in a line of duty or an active dude find that they're active duty, just based on hypotheticals, and all the cases that we cited and plaintiffs attorney has cited, it's all. They are all doing something for the police department, or for the, or for a civilian. It's not just simply driving, if it was driving, we could all get in a car accident, because someone blows a stop sign. Nobody's disputing here that he was involved in an accident. No. Okay. On the causation issue it's a little bit different. He may have been involved in an accident. However, does that support that the accident caused his back injury. That's really what the causation issue is about. Yes, he had an accident, but did that cause his condition of well being. Correct. Correct. And you're saying that it didn't. Correct. And you're saying even if it did, it wasn't line of duty. Right. Because even if it did, even if this court found that, based on all the evidence they couldn't find. And they found a causal connection between the October 25 2015, and where the plaintiff sits today. There still is that question, what, what was his capacity at the time that he was hit, and his capacity was simply a patrol officer driving. Now there's a lot there are case law of how you need to summarize because your time is up and you will have an opportunity for rebuttal. Thank you, Your Honor, I would just like to summarize that, based on the credibility, there is multiple evidence, based on his testimony and exhibits that find that he is not credible and we asked for you to affirm the pension board's decision. Thank you. Thank you. Right, Mr. Raja, Raja, I'm sorry if I'm pronouncing that wrong. Raja. Raja. All right, if you are ready, you may proceed. Thank you may please the court opposing counsel. Good morning justices. My name is Tom Raj I represent Arthur strong, the officer in North Chicago who is the appellee in this case, going off the justices questions I think I'm gonna jump right into it I mean this case this denial amounted to a pension board that simply didn't like officer strong. And that's what they base their decision on their, their credibility determinations is the failsafe basis that they utilized in an effort to deny his benefits, as you can see from the record. The applicants testimony was unrebutted during the trial this matter in fact the credibility determinations that counsel talks about were only brought up for the first time at the circuit court level. They were not put in the board's decision in order as to any basis for why they found him on credible, and even if even if they did use the same credibility determinations that counsel used in the circuit court, those credibility determinations did not go to whether or not the officer was disabled, and they did not go to whether or not there was causation between the duty injury, and his disability. The way the medical evidence seems to line up with your argument that he was disabled. I mean, we've gone over Dr graph versus all the other medical experts who support the conclusion that Mr strong or officer strong was disabled. I think the more challenging issue is the causation because I think particularly on that issue, the credibility of officer strong, you know, is a key factor. According to the testimony the testimony the medical records. Certainly I think it's fair to say conflict as to when he began to experience the back pain. So tell us why his credibility doesn't come into play on the causation issue. Well, his credibility as to when he when he felt back pain wasn't disputed the clear undisputed medical evidence is the first doctor he sees for his back. indicates, and that's Dr Perique indicates that he has been having ongoing pain since the date of the accident. And at the Lake Forest Hospital he also had an x ray done on his hip, which, as you know, is relevant to the back so and with respect to when you're in a car accident one you have shock to not all your symptoms become manifested immediately. You know he had other pains that he was experiencing. At the same time, and the oftentimes when there's a car accident or significant injury. You don't recognize some of the injuries you experience until a little bit of a delay. The date of the accident was again what day October 25 of 2015 he first sees Dr Perique for his back injury in January so about eight weeks after the injury which which isn't surprising. I mean it would be nice if he complained immediately on my back and and had treatment rendered immediately. He indicated to Dr Perique he was using a leave to try to alleviate the pain in his back since the date of the injury. Let me ask you this according to the record, and an October 29 2015 appointment with Dr. Lee, Dr Lee expressly noted that your client reported no back pain reports from the remaining three appointments were also silent on the issue of back pain. That's what Dr. Lee noted it you know he wasn't seeing Dr. Lee for his back at that time. And it's, he may not have been feeling significant back pain because of the other injuries that were more prominent at that time and that's common. And I would point out justice that none of the none of the physicians that evaluated officer strong found the delay and reporting the back pain to be of significance. They all found him disabled and that the cause of his disability was that work related incident, Dr Perique certainly the first doctor to evaluate him found nothing surprising about the fact that he was taking a leave and experience experience at least, you in November of 2010 where there was no evidence of any herniation in his, in his back. He had a perfectly normal finding with respect to that MRI. Then the first MRI that's done is in February of 2016. That's in the record at C 610 that shows a herniated disc. There was no other intervening event between 2010 and 2016, other than this car accident that would have demonstrated a herniated herniated disc into the back. What was his work history after the accident, how long was he offered, or did he not go back to work at all. He did not go back to work, my understanding if he did it may have been for a short period in a light duty capacity but he never returned to full duty work. After the incident. And as I mentioned, the objective evidence in this record are one, the doctor's findings with when they saw him. There's case law indicates that a doctor's finding of pain is an objective finding with respect to their evaluation, and Dr. Perique noted that he did experience pain. Since the date of the accident he was the only doctor that he was the first doctor to treat him after the accident that was actually seeing him specifically for the back injury. And when you look at the totality of all the other doctors including Dr. Graff which by the way the pension board never made a finding that they were relying upon Dr. Graff to deny this claim. And they and they know, and there was no, and nor, nor could they because as Justice Brennan pointed out that Dr. Graff never made a finding that the officer could return to work in any capacity. He said he said he would rely upon orthopedic physicians, as well as the FCA, neither of which found that the officer could return to full unrestricted duties. In of significance is Dr. Graff was the workers comp IME physician selected by the employer. So if any physician were to have found that there was a credibility issue with his delay in reporting pain, or if there was some issue with respect to the accident you would expect the IME physician Dr. Graff to point that out in his report he never did. In fact, Dr. Graff, and every report he has in the record which were numerous. He says that the current condition is causally related to the work injury. He says surgery is necessary and causally related to the injury. And at no point does he say that either opine negatively as the causation or that he's not disabled. When you look at Dr. He says he's disabled, and that's significantly the three expert hired by the board, all of them indicate that officer strong was disabled, and all of them indicate that his disability was caused by their work injury on October. 2015 hip knee and back injuries often make it difficult to sit for extended periods of time. But yet, that's one of the things that he did I think for target he he patrolled the parking lot, correct. He did judge that there was no evidence in the record as to how long he would do that or how long it shifts were with respect to that, or whether or not he had a treatment after had any significant. Pain reaction or anything like that but what he what evidence was in the record was that what he was doing was within the restrictions of any of the treating physicians that he was seeing. He was not performing anything that was outside of those restrictions, which is perfectly acceptable to do, unless you're getting PETA benefits, which is the discipline that was that was brought up throughout this case which we feel that the discipline is half the discipline was from 2009 or 2011. The officer was clearly working full unrestricted duties in 2015, so that discipline didn't keep the employer from feeling he was a good officer to continue working for the department. You know, I think this was really a smear campaign against officer strong to make him look like a bad guy and influence either the circuit court or this court to find against him based on credibility to terminate termination that really has nothing to do with the, with the motor vehicle accident that he was in, in 2015. Roger if I could ask you a couple of pointed questions, if you will. Sure. The truth and administrative review the board's assessment of the credibility of the witnesses and the way to be given to the evidence is within the province of the board. We defer to their credibility findings doing that. You do judge it unless those credibility determinations have nothing to do with the issue at hand, which is the disability or the causative nature and although they attempt to find some credibility issues. First of all, as I mentioned the board never made those findings it was it's counsel at circuit court, but secondly, those credibility determinations in no in no way first were objective and by any means and they didn't go towards whether or not he was disabled and whether or not there was causation with respect to you agree that our standard review here is manifest way to be evidence correct. I do judge unless there's historical facts that are not in dispute. That means in other words that we would, in order to reverse the board decision we would have to conclude that an opposite conclusion to the one reached by the board was clearly apparent. Is that correct. That's correct, George and we feel that the plaintiff has met his burden of establishing that here as there is zero evidence, he was injured anywhere else. There's zero evidence that he's not disabled and can return to full unrestricted duties. There's zero evidence to by any physician discounting causation that with respect to the disability and the work injury on October 25 2015. Without the board having some evidence that they can point to to demonstrate that this accident didn't happen, the accident happened somewhere else, or a physician finding, you know, the, the problems with his back and the continuing pain and medication, and his inability to lift the weight and perform the functions of functions of a police officer was somehow related to some other incident, you know, then they may have an argument to say this is why we, we discounted causation. We don't have any of that in this record. They don't point to any piece of objective evidence in their findings and decision, or in the circuit court for that matter. If you see judge there's been a moving target for the, for the plaintiff in this matter. First it was because he signed a settlement agreement and therefore he wasn't a police officer that that argument went out the window, once it was debunked by the circuit court. They haven't pursued that here, and in the circuit court it was interesting the suitcase weighed 50 pounds or more that he was lifting as part of his Uber driver. Now before this court, they're saying well he can, he was able to squat when he when he lifted that suitcase which wasn't argued at the lower court. So there's been a constant moving target and I think it's a matter of the board trying to find an argument that will fit their narrative and unfortunately there's just no evidence to support it. And that's why we think that this court should affirm the circuit courts reversal, and in fact reverse the decision of the pension board and find in favor of officer strong. The last point I'd like to make is I cited in my brief, if the board was to rely upon any one specific doctor to deny this claim. They alleged it's Dr graph even though he doesn't come to an opinion that he's either not disabled, or that there's no causation, they have to articulate those findings, so that this court can can review what the why they based their decision on that record. And that's coin verse Milan, if they're going to rely upon one doctor they have to articulate that to have meaningful review. They didn't rely upon any one doctor because there wasn't one. Their attempt to argue that now is, is, you know, let's throw something at the wall and see what sticks, but there's just nothing in the record to support their finding. What is the remedy then for failure to articulate these reasons as you're as you're stating here today. Is it a remand is it a reversal, what what's the best remedy I guess. Well, I think the remedy is certainly within the discretion of this court we feel the best remedy is to affirm what the circuit court found and to reverse their decision, a remand judge would would do nothing because the record doesn't have any, any findings that they could rely upon that's why they didn't put it in their original decision. There is no medical that they can rely upon to deny disability or causation, there's no witnesses that testified, other than officer strong and officer Strong's testimony was unrebutted, as again found by the circuit court, because they didn't ask them, they asked them one question about him pursuing a suspect vehicle. The one question was did you activate your lights and siren. And his testimony was clear and unequivocal and he said I didn't activate my lights and siren because I hadn't caught up to the guy yet. In order to do that. And there was no further questioning on that. So, you know, there's nothing in the transcripts from the testimony, nothing in this entire voluminous record that the board could articulate facts to support the denial. And that's why we think that this should be reversed and he should be awarded a line of duty disability, based on his meeting of the his burden of proof, which is proponents of the evidence to demonstrate he had a work related injury. All right. Thank you, Mr. Roger. Thank you, George. Now, Miss wrestler if you wish to respond you may do so in the time that is left. Thank you. I just want to make a couple points. The plaintiff has the burden of proving whether or not he is disabled at this, not the not the pension board to determine whether or not he's not disabled. Based on the preponderance of the evidence the plaintiff was the only person that testified at this hearing the pension board looked at his testimony compared to the plaintiffs application that he's sworn was truthful. They're not making up things whether of what the plaintiff testified to compared to what, you know, officer, you know, Joe schmo said they, there's just one witness, all the cases that have provided, you know, an overturn finding that the plaintiff is credible over, you witnesses to support the credibility of the officer the applicant, the disabled applicant here, the pension board only had the applicant, or the plaintiff of his testimony compared to the his statements. Again, how did the board actually express its findings on this issue of credibility in its ruling. What did it. Right, so they expressed that they found that he was uncredible not credible. They stated that they didn't find him credible and that they found that he that what he did, how he was injured was not due to an act of duty and they also found that he is injury was not caused by the act of duty. Did they reference this potential grievance on the special benefits that he did. They did reference, I believe they referenced that on the, they did reference that he was that there was a resignation agreement that was entered into. But they, they, and that for that resignation agreement that goes to, he was brought up because he was working secondary jobs, even though he was not working at the city of North Chicago Police Department, at that time, the, that is what one of some of the, the grievance was about is that they had no idea, and all the medical doesn't explain or doesn't state whether or not he is doing any other outside activity other than the police department. When you say, when you say the board had no idea, wasn't it pretty much the city or the city. Okay. But wasn't it pretty common knowledge that he had pretty much always worked a second job, whether it be every day or on a part time basis because he was the father of six kids and one of them was in college. Well, that's what he testified to but but what the, what the grievance said is that they had no knowledge because he was accepting PETA, I mean, PETA is that Public Employee Disability Act where you can't work a second job if you are claiming disability, you and receiving 100% of your I did it, there it goes. Police pay. So for him acting as a Uber driver and, and that, yes, that, that is a, that goes to, if he, if he was aware of it, the police department was not because they wouldn't be paying him PETA. The other point is if you for COIN, the COIN matter they remanded the case back to the police department to be more specific if that is what this court requires us, the pension board to do, we would not object to being remanded to state our in specifics, but the pension board was specific that he was not credible. He had his acts of acts in the was not an act of duty, and they found that he was not disabled based on a line of duty and not disabled based on a non duty disability. We would ask this court to affirm such. Thank you both counsel for your arguments and for participating in this particular forum with us. As I said, we hope to see you both back under for another case up front and personal in the near future. We will take this matter under advisement, we will render a decision in due course, we are now going to stand in Reese or adjournment actually we're finished for the day, and you are both released from the zoom platform. Thank you. Thank you.